LYNN LINCOLN SARKO
JULI E. FARRIS (CSB No. 141716)
ELIZABETH A. LELAND
SHANE P. CRAMER
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone:      (206) 623-1900
Facsimile:      (206) 623-3384

GARY A. GOTTO
KELLER ROHRBACK P.L.C.
National Bank Plaza
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone:      (602) 248-0088
Facsimile:      (602) 248-2822

**Attorneys for Lead Plaintiff Gerald del Rosario**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE ZORAN CORPORATION DERIVATIVE LITIGATION | ) ) ) **Civil Action No. 06-05503-WHA** |
| _____ | ) |
| This Document Relates to: | ) ) **LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, INCLUDING AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |
| All Actions | ) ) ) ) |
| | ) ) **Date :  August 18, 2008** |
| | ) **Time:   2:00 p.m.** |
| | ) **Courtroom 9, 19th Floor** |
| _____ | ) **The Honorable William Alsup** |

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

I.    INTRODUCTION .................................................................................1

II.   LITIGATION BACKGROUND ..........................................................3

III.  THE PROPOSED SETTLEMENT.....................................................4

    A.    Cash Consideration. ......................................................................4

    B.    Repriced Stock Options. ...............................................................5

    C.    Cancelled Stock Options................................................................5

    D.    Corporate Governance Reforms. ...................................................6

    E.    Scope of Release. ..........................................................................7

IV.  IMPLEMENTATION OF THE NOTICE PLAN .................................7

V.   THE SETTLEMENT WARRANTS FINAL APPROVAL....................8

    A.    The Law in the Ninth Circuit and Elsewhere Strongly Favors
        Settlement. .....................................................................................8

    B.    The Applicable Standards for Approval of Derivative Settlements. ......................9

    C.    The Settlement is Fair, Reasonable, and Adequate...........................................9

        1.    The risk, expense, complexity, and likely duration of
                further litigation favors settlement.............................................9

        2.    The Settlement benefits the Company and its shareholders. .....................12

        3.    The Extent and result of Lead Plaintiff's investigation and
                discovery support settlement approval.........................................15

        4.    The Settlement was reached through arm's length
                negotiation by experienced and informed counsel....................................15

    D.    The Notice to Zoran's Shareholders is Adequate. ................................................17

VI.  LEAD PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES AND
     REIMBURSEMENT OF EXPENSES ...............................................18

    A.    The Legal Standard Governing the Award of Attorneys' Fees in
        Derivative Cases. .........................................................................18

    B.    The Settlement Confers Substantial Benefit on Zoran. .........................................19

    C.    The Amount Requested for Attorneys' Fees is Reasonable. .................................20

        1.    The Fee request represents an appropriate percentage of the
                total recovery. ...........................................................................20

2.      The request is appropriate when compared to lodestar.............................21

3.      The fee request is consistent with prior agreements of the parties. ...................................................................................22

4.      The fee request is justified by common fund considerations....................22

D.      The Amount Requested for Reimbursement of Costs is Reasonable. .........................................................................23

VII.    CONCLUSION..........................................................................24

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299 (1985) ........................................ 21

*Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993)............................................ 9, 14, 17, 18

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979)........................................................ 16

*Chiulli v. Hardwicke Cos.*, No. 6785, 1985 WL 11532, *2 (Del. Ch. Feb. 11, 1985).................. 8

*Chrysler Corp. v. Dann,* 43 Del.Ch. 252A.2d 384, 386-87 (1966) ............................................ 19

*Cohn v. Nelson,* 375 F.Supp.2d 844 (E.D. Mo. 2005) .................................................... 20, 21, 22

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir.1992) ...................................... 12, 14

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ........................................................................ 23

*Hill v. Berdon* ("*Barnes & Noble*"), Slip Opinion, No. 602389/2006 (N.Y. Sup. Ct. May 5, 2008) ............................................................................................................ 13

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) ............................................... 20

*In re Applied Micro Circuits Corp.*, Slip Opinion, No. 06-04269 (N.D. Cal. May 8, 2008) ................................................................................................................ 13, 21

*In re Continental Illinois Sec. Litig.,* 962 F.2d 566 (7th Cir. 1992) .......................................... 22

*In re Family Dollar, Inc. Shareholder Deriv. Litig.*, Slip Opinion, No. 3:06-CV-00-510(W) (W.D.N.C. Aug. 13, 2007) ........................................................................ 21

*In re Jabil Circuit, Inc.*, Slip Opinion, No. 06-2917 (Fla. Pinellas County Ct. Apr. 7, 2008) .............................................................................................................. 13

*In re M.D.C. Holdings Sec. Litig.*, No. 89-0090, 1990 WL 454747, (S.D. Cal. 1990) ............... 18

*In re Omnivision Tech.*, Inc., ___F. Supp. 2d., __, 2008 WL 123936 (N.D. Cal. Jan. 9, 2008) ............................................................................................................ 15, 20, 23

*In re Oracle Sec. Litig.,*  852 F. Supp. 1437 (N.D. Cal. 1994) .................................. 19, 20, 21, 23

*In re Pac. Enter. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)........................................................ 9, 16

*In re Sepracor, Inc. Deriv. Litig.*, Slip Op., No. 06-11759 (D. Mass. Jan. 25, 2008) ................. 13

*In re The Cheesecake Factory Inc. Deriv. Litig.*, Slip Opinion, No. 06-06234 (C.D. Cal. April 14, 2008) ............................................................................................ 13

*In re Washington Pub. Power Supply Sys. Sec. Litig. ("WPPSS")*, 720 F. Supp. 1379 (D. Ariz. 1989)..................................................................................... 8, 9, 15

*In re Zoran Corp. Derivative Litigation*, 511 F. Supp. 2d 986 (N.D. Cal. 2007)............... 3, 10, 19

*Kyriazi v. Western Elec. Co.,* 647 F.2d 388 (3d Cir. 1981) ....................................................... 17

*Lewis v. Anderson,* 692 F.2d 1267 (9th Cir. 1982) ........................................................ 19

*Linney v. Cellular Alaska P'ship*, 151 F.3d 12342 (9th Cir. 1998) ................................ 11

*Maher v. Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983) ................................ 9, 14, 17, 18

*MWS Wire Indus., Inc. v. California Fine Wire Co., Inc.*, 797 F.2d 799 (9th Cir. 1986).............. 8

*Nat'l Rural Telecomms. Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................................................................... 16

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ................................................................................................................... 15

*Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188 (6th Cir. 1974) ............................ 20

*Rodriguez v. West Publ'g. Corp.*, No. 05-3222, 2007 WL 2827379, *9 (C.D. Cal. Sept. 10, 2007) .................................................................................................... 16

*Valerio v. Boise Cascade Corp.,* 80 F.R.D. 626 (N.D. Cal. 1987), *aff'd* 645 F.2d 699 (9th Cir.), *cert. denied* 454 U.S. 1126 (1981) .................................................. 17

*Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151 (S.D.N.Y. 1971) ............................ 9

*Zimmerman v. Bell*, 800 F.2d 386 (4th Cir. 1986)........................................ 8, 14, 15

**Rules**

Fed. R. Civ. P. 23.1 ........................................................................................ 1, 9, 17, 22

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 18, 2008, before the Honorable William H. Alsup, 450 Golden Gate Avenue, San Francisco, California, Lead Plaintiff Gerald del Rosario will move the Court for an Order Finally Approving the Proposed Settlement, Including Award of Attorneys' Fees and Reimbursement of Costs in this action. This motion is made pursuant to Fed. R. Civ. P. 23.1 and is based upon the accompanying Memorandum of Points and Authorities, the Declaration of Juli E. Farris in Support of Lead Plaintiff's Motion for Final Approval of Proposed Settlement and Award of Attorneys' Fees and Reimbursement of Expenses ("Farris Dec") filed herewith and accompanying exhibits, including the Stipulation of Settlement as amended pursuant to this Court's Order ("Stipulation"), as well as the pleadings and records on file herein, and such other matters as may be presented to the Court.

## ISSUES TO BE DECIDED

1.   Should the proposed Settlement set forth in the Stipulation of Settlement be approved as fair, reasonable, and adequate?

2.   Should this Court grant Lead Plaintiff's request for $1,000,000 in attorneys' fees and $363,244 in expenses?

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

By order dated June 11, 2008 ("Preliminary Approval Order"), this Court preliminarily approved the proposed settlement in this action (the "Settlement"), the details of which are set forth in the Stipulation of Settlement ("Stipulation"). Farris Dec., Ex. A. Pursuant to the Preliminary Approval Order, Lead Plaintiff Gerald del Rosario respectfully moves this Court for entry of a final order and judgment, approving the Settlement.

The Settlement provides substantial monetary and non-monetary value to Zoran, and is in the best interests of Zoran.  The Settlement will provide immediate and tangible value in the form of $3,395,000 in cash being paid to Zoran, $296,250 of which will be paid by Defendant Levy Gerzberg, Zoran's CEO, and $98,750 of which will be paid by Defendant Karl Schneider, Zoran's CFO.  Farris Dec., Ex. A at ¶ 2.4(a).

The $395,000 to be paid directly by Defendants Gerzberg and Schneider represents the profit these Defendants personally received as the result of the alleged backdating of the September 19, 2001 option grants.  In addition, Defendants Gerzberg, Schneider, and Stabenow have agreed to reprice allegedly backdated stock options they now hold, beyond those they voluntarily repriced in December, 2006.  Farris Dec., Ex. A at ¶ 2.4(b).  The intrinsic value of this repricing, i.e. the difference between the original exercise price and the adjusted exercise price of these options, is approximately $256,932.[1]  Dr. Gerzberg has also agreed to cancel stock options valued at $482,310 (using the Black-Scholes valuation method), which represents the profit he received from the alleged backdating of the August 2002 option grant.  *Id.*, Ex. A at ¶ 2.4(c).  Lead Plaintiff's expert estimates that the total value to the Company of these aspects of the settlement is between $3,983,829 and $5,226,300.  Johnson Aff. at 15.  Zoran has also agreed to implement corporate governance measures, for a period of three years.  Farris Dec., Ex. A at ¶ 2.2.

For the reasons set forth in the Motion for Preliminary Approval of Proposed Settlement (Dkt. No. 188) ("Preliminary Approval Motion") and explained herein, the Settlement is in all aspects fair, reasonable, and adequate and, therefore, warrants final approval.

---

[1]  Corrected Affidavit of Chris W. Johnson (Dkt. No. 193-2) ("Johnson Aff."), at 13 at 3.  The value of these repricings to the Company, using the Individual Defendants' Black-Scholes inputs, consistent with this Court's April 7, 2008 Order, is $106,519.  *Id*. at 13.

LEAD PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF PROP SETTLEMENT AND AWARD ATTY FEES
(Case No. 06-05503-WHA) - Page 2

## II.    LITIGATION BACKGROUND

In his Consolidated Complaint ("Complaint"; Dkt. No.47), as modified by the Court's June 5, 2007 order, denying in significant part defendants' motion to dismiss, *In re Zoran Corp. Derivative Litigatio*n, 511 F. Supp. 2d 986 (N.D. Cal. 2007), Lead Plaintiff asserts claims under §§ 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78n(a), 78(a), as well as claims under state law for breach of fiduciary duty, constructive fraud, abuse of control, corporate waste and gift, gross mismanagement, unjust enrichment, and rescission. Complaint ¶¶ 314-78. The Complaint alleges, among other things, that from at least 1997 through 2005, the Individual Defendants engaged in unlawful or improper practices related to Zoran's granting and accounting for stock options. This conduct allegedly resulted in false or misleading financial statements and proxies, additional compensation expenses and tax liabilities, and other expenses, including but not limited to those relating to the Special Committee's investigation and April 20, 2007 restated financials. In addition, Lead Plaintiff has subsequently alleged that certain practices and option grants not specifically asserted in his Complaint violated the Company's stock option plans or are otherwise actionable.

Defendants have answered the Complaint and asserted numerous affirmative defenses thereto, and the parties have engaged in discovery, exchanging information relating to the grants challenged in the Derivative Litigation. The discovery conducted by Lead Plaintiff includes, but is not limited to, the review of over one and a half million pages of documents and depositions of key witnesses. Farris Dec., ¶ 28-29.

On September 11, 2007, the parties commenced settlement negotiations by attending Court-ordered mediation proceedings before the Honorable Charles A. Legge of JAMS. *Id.*, ¶ 31. Thereafter, the parties continued their settlement discussions and had numerous face-to-face

meetings and telephone conferences, with and without Judge Legge, in furtherance of a possible resolution of the Derivative Litigation. *Id.*, 32.

On February 26, 2008, Lead Plaintiff moved for preliminary approval of a proposed stipulation of settlement involving the cancellation or repricing of certain stock options, the implementation of certain corporate governance measures and other provisions, including payment of Lead Plaintiff's Counsel's fee. On April 7, 2008, the Court denied Plaintiff's Motion for Preliminary Approval. Order Denying Preliminary Approval of Proposed Settlement of Derivative Action (Dkt. 164) (April 7, 2008).

From March through mid-May, the Parties engaged in a substantial amount of additional discovery. Preliminary Approval Motion at 7; Farris Dec. at ¶ 33. Guided by the Court's April 7, 2008 Order and the additional facts uncovered during the discovery that occurred after the April 7 order was entered, the Parties also engaged in additional settlement negotiations. All of these negotiations were conducted in good faith and at arm's-length. *Id.*, ¶ 34. After several rounds of offers and counteroffers, on May 29, 2008 the Parties reached an agreement, as set out in the Stipulation filed herewith, which the Court preliminarily approved on June 11, 2008. (Dkt. No. 198).

### III.   <u>THE PROPOSED SETTLEMENT</u>

The proposed Settlement includes the following elements:

**A.   <u>Cash Consideration.</u>**

Defendants have agreed to cause $3,395,000 in cash to be paid to Zoran. Of this amount, $296,250 will be paid by Defendant Gerzberg, and $98,750 will be paid by Defendant Schneider. The remaining $3,000,000 will be paid to the Company on behalf of the Individual Defendants through applicable insurance. Farris Dec., Ex. A at ¶ 2.4(a).

**B.      Repriced Stock Options.**

Defendants Gerzberg, Schneider, and Stabenow will reprice the following options to the adjusted exercise price reflected in Zoran's April 20, 2007 restatement of financials [2]

| Defendant | Grant Date | Exercise Price | Adjusted Price | # of Options |
|---|---|---|---|---|
| Gerzberg, Levy | 8/09/02 | $12.36 | $14.69 | 42,375 |
| Schneider, Karl | 9/19/01 | $11.52 | $15.47 | 11,563 |
| Schneider, Karl | 8/9/02 | $12.36 | $14.69 | 43,750 |
| Stabenow, Arthur | 3/16/01 | $8.67 | $11.49 | 3,750 |

Farris Dec., Ex. A at ¶ 2.4(b).

**C.      Cancelled Stock Options.**

Dr. Gerzberg has agreed to cancel the following stock options as further consideration:

| Defendant | Grant Date | Exercise Price | Black-Scholes Value (per share) | # of Options |
|---|---|---|---|---|
| Gerzberg, Levy | 7/15/03 | $24.78 | $1.22 | 289,107 |
| Gerzberg, Levy | 7/28/00 | $27.33 | $.96 | 135,000 |

Farris Dec., Ex. A at ¶ 2.4(c).

As part of the Settlement, the parties agreed that the number of shares to be cancelled by Dr. Gerzberg would be determined using the Black-Scholes valuation method, based upon the closing price of Zoran company stock as of May 13, 2008, or the closing price on the date immediately preceding the date of the Preliminary Approval Order, whichever was lower, to maximize the number of options to be returned to the Company as a result. *Id.* Because the lower closing price fell on May 13, 2008, the Settlement provides that Dr. Gerzberg will cancel options based on the closing price that date, as reflected above and in the Stipulation. Using the Black-Scholes method and the Company's closing stock price on May 13, 2008, the cancellation of these options will confer $482,310 in value to the Company. This represents the profit that

---

[2] The number of options and stock price for all of the options to be repriced or cancelled has been adjusted for Zoran's 3:2 stock split in May 2002.

Dr. Gerzberg personally received from the allegedly backdated portion of the August 2002 stock option grant. The methodology and inputs used to arrive at this value are set forth in Exhibit A to the Stipulation. Additional information relating to this calculation is also found in the Johnson Affidavit (Dkt. No. 193-2), at pp. 8-11.

The cash contributions made by Gerzberg and Schneider, the repricings, and the cancellation of options by Gerzberg will convey substantial benefit to Zoran and combine to ensure that the Individual Defendants have not, and will not, themselves profit from any of the allegedly backdated grants they received that were ultimately remeasured as a result of the Special Committee's investigation of the Company's stock option practices.[3]

**D.    Corporate Governance Reforms.**

Zoran, through its Board of Directors, has agreed to adopt the corporate governance measures identified in paragraphs F through EE of Attachment A to the Stipulation, not less than 30 days after the Judgment has become Final.[4]   Farris Dec., Ex. A at ¶ 2.2.  As additional consideration for the Settlement, both the measures previously adopted by the Company in September 2006 (paragraphs A through E) and several additional measures (paragraphs F through EE), shall continue for a period of at least three years. *Id.*

The additional measures that were negotiated as part of the Settlement include, among other things, the prompt preparation and circulation of meeting minutes reflecting all option

---

[3] Two defendants with whom Lead Plaintiff executed tolling agreements, Aharon Aharon and Isaac Shenberg, also received options that were remeasured as a result of the Special Committee's investigation.  However, Aharon is no longer employed with the Company and his options were cancelled before he exercised them, and Lead Plaintiff does not believe that Shenberg was involved in the decision regarding the award of the options at issues.

[4] Unless otherwise explained, the capitalized terms used in this memorandum and other papers filed this date are used as previously defined in the Stipulation. *See,* Farris Dec., Ex. A, ¶¶ 1.1 – 1.21.

grants; the appointment of a new independent director; at least four annual meetings of the Compensation and Audit Committees; an independent evaluation of Zoran's executive compensation policies, practices, and procedures, compared to those of comparable public companies every three years; increased officer and director education; and annual education for appropriate members of the Finance Department.  Farris Dec., Ex. A at Attachment A.  These non-monetary reforms confer an additional benefit to the Company and its shareholders and are intended to help prevent the recurrence of issues that gave rise to this litigation.

**E.**     **Scope of Release.**

Consistent with this Court's prior orders, the release applies only to claims that were alleged in the Complaint, or are "closely related thereto," and is limited in time to claims that arose on or before March 14, 2007, when Lead Plaintiff filed his Consolidated Complaint.  Farris Dec., Ex. A, ¶ 1.14.

### IV.     IMPLEMENTATION OF THE NOTICE PLAN

Since the Preliminary Approval Order, notice has been provided to all Zoran shareholders of record.  On or before June 23, 2008, Zoran sent notices of the proposed settlement to all of its shareholders of record, with instructions to transmit the same to all of Zoran's beneficial shareholders.  Affidavit of Mailing, attached to Farris Dec. as Ex. K; Farris Dec., ¶ 55.  Lead Plaintiff's Counsel created a section on its Settlement website dedicated to Zoran, http://www.kellersettlements.com/zoran.html, available at as of June 25, 2008, on which it posted the Notice, Stipulation and Settlement documents, Preliminary Approval Order, Consolidated Complaint, and other relevant case information as directed by the Court in its June 12, 2008 Order Approving Notice of Proposed Settlement Subject to Stated Conditions (Dkt. No. 200).  Lead Plaintiff's Counsel will continue to update the website with filings relevant to the

pending Settlement as they become available.  As of July 17, 2008, the dedicated settlement website had received a total of 140 "hits."  Farris Dec., ¶ 56.

In addition, Lead Plaintiff's Counsel provided Zoran shareholders with a toll-free number dedicated specifically to this Settlement that was listed in the Notice and is posted on the website.  The toll-free number provides Zoran's shareholders with an efficient vehicle by which to relay any questions or concerns regarding the Settlement.  Farris Dec., ¶ 57.  As of July 17, 2008, Lead Plaintiff's counsel and staff had received six phone calls and one email inquiry related to the Settlement and have responded to all of them, typically within 24 hours. *Id.*

While the Notice informed Zoran's shareholders of their right to object, the deadline for submission of objections has not yet expired and to date Lead Counsel has received no objections to the Settlement.  *Id., ¶* 58[5]

## V.      THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.      The Law in the Ninth Circuit and Elsewhere Strongly Favors Settlement.

It is well-settled that the law favors settlement, particularly in complex cases, such as the case at bar.  *In re Washington Pub. Power Supply Sys. Sec. Litig. ("WPPSS")*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989); *MWS Wire Indus., Inc. v. California Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986) ("[t]here is an overriding public interest in settling and quieting litigation") (internal quotation omitted); *Zimmerman v. Bell*, 800 F.2d 386, 392 (4th Cir. 1986); *Chiulli v. Hardwicke Cos.*, No. 6785, 1985 WL 11532, at *2 (Del. Ch. Feb. 11, 1985).   Indeed, "[s]ettlements of shareholder derivative actions are particularly favored because such litigation is notoriously difficult and unpredictable."  *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir.

---

[5] The Preliminary Approval Order provides that objections should be filed on or before August 4, 2008.  If any objections are submitted, Lead Plaintiff will respond to them on or before August 11, 2008, the date for filing his reply in support of this Motion.

1983) (internal quotations omitted); *see also In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Because settlement is "the preferred means of dispute resolution" in complex cases, *WPPSS*, 720 F. Supp. at 1387, courts "do not lightly reject such settlements."  *Maher*, 714 F.2d at 455.

**B.**    **The Applicable Standards for Approval of Derivative Settlements.**

In evaluating the propriety of the settlement of a derivative action brought under Fed. R. Civ. P. 23.1, the universally applied standard is whether the settlement is "fundamentally fair, adequate and reasonable."  *Pac. Enter.*, 47 F.3d at 378 (citation omitted); *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993).

In passing upon the propriety of the proposed settlement, the Court should not decide the merits of the case or substitute its judgment for that of the parties.  *Maher*, 714 F.2d at 455.  The settlement was negotiated for the specific purpose of avoiding such an evaluation.  *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971).  Rather, it the Court's role to consider "whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval."  *Id.* (citation omitted).    The proposed settlement is fair, adequate and reasonable when examined in light of these factors.

**C.**    **The Settlement is Fair, Reasonable, and Adequate.**

**1.**    **The risk, expense, complexity, and likely duration of further litigation favors settlement.**

While any lawsuit carries inherent risks to both sides, such risks are a particular reality of derivative litigation, which are "rarely successful."  *Pac. Enter.*, 47 F.3d at 378.

This Court's comprehensive ruling on the Defendants' motion to dismiss is instructive in evaluating the relative strength or weakness of Lead Plaintiff's claims in light of the underlying evidence.  Although Lead Plaintiff has satisfied the demand futility requirements of Rule 23.1

and stated a claim for relief on many of his claims, *Zoran*, 511 F. Supp. 2d at 1009-17, the scope of claims that Lead Plaintiff would ultimately be permitted to bring remains at issue.

Defendants have pursued a number of affirmative defenses, including that Lead Plaintiff should have been required to make a demand on the board, that the business judgment rule protects the Individual Defendants from liability for anything other than bad faith or fraud, that the Defendants are protected by the exculpatory clause in Zoran's articles of incorporation, that Defendants justifiably relied on the advice of their attorneys and accountants in making the stock option grants, and that the Special Committee's investigation adequately addressed any deficiencies.  Defendants would likely also assert that the lack of enforcement action by the SEC and U.S. Attorney supports their claim that no significant wrongdoing occurred.  Lead Plaintiff considered these risks when evaluating the settlement.

Litigating this action to its conclusion would also be extremely costly.  The Company, outside Directors, Gerzberg, Schneider, and Martino are each represented by their own counsel, compounding the costs and complexity of discovery and litigation, including future hearings or proceedings and trial.  The parties have, or can be expected to, retain expert witnesses on a variety of topics including relevant accounting standards, corporate governance, statistical analysis and damages.  The development of additional expert reports, the depositions of these experts, and the presentation of these experts' testimony at trial would substantially increase the cost to all of the parties, possibly without commensurate benefit to the Company.

Lead Plaintiff also considered the potential arguments of Zoran's insurance carriers regarding coverage with respect to each of the allegations in Lead Plaintiff's Consolidated Complaint, which would increase both the costs and the risks to the Company of continuing to litigate these matters.  While Lead Plaintiff maintains that his claims are legitimate, the

evidentiary hurdles and potential burdens with respect to the standard of proof, and additional costs of litigation, when compared to the benefits that could be immediately conferred through the existing proposal, lend support to final Settlement approval.

Lastly, the amount of potential recovery is in dispute. Defendants challenge a significant portion of the total damages alleged by Plaintiff, and the theories under which they are alleged. While Zoran's restatement reported an $11.7 million charge, much of this amount represents remeasurement of options that were never exercised and cannot be exercised in the future. Moreover, with respect to the claims laid out in Lead Plaintiff's expert's damages report, Defendants are expected to argue that much of these costs are not compensable, even if Plaintiff were to prevail at trial, because they are not attributable to the Individual Defendants' actions.

When analyzed using the expectation measure of damages at the time the grants were made, Lead Plaintiff's damages expert estimates that the total damages attributable to the Individual Defendants' personal gain was $188,590, *see* Bohn Report (Dkt. No. 148), p. 16, which if true, makes a return of $3,395,000 in cash (less awarded attorneys' fees and costs), in addition to the repricing and cancellation of options, a remarkable recovery, well above what Lead Plaintiff might have expected to receive at trial. Thus, when the inherent risks of litigation and likelihood of recovery are taken into account, Lead Plaintiff's Counsel believes that the monetary component of the proposed Settlement is well within the range of reasonableness.[6]

---

[6] While Lead Plaintiff might secure a higher amount from Defendants at trial, such a result would be speculative and subject to the significant litigation risks set forth herein. Courts have repeatedly held that the mere potential of a higher recovery is not sufficient grounds for disapproval of a settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

LEAD PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF PROP SETTLEMENT AND AWARD ATTY FEES
(Case No. 06-05503-WHA) - Page 11

2.     <u>**The Settlement benefits the Company and its shareholders.**</u>

In passing on the propriety of a derivative settlement, the Court must determine whether the proponents of the settlement have shown that it confers substantial benefit on the corporation on whose behalf the action was instituted.  *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir.1992).  As set forth in the Preliminary Approval Motion, the Settlement confers substantial monetary and non-monetary benefits on Zoran.

Zoran will receive $3,395,000 in cash (less awarded attorneys' fees and costs).  This amount will serve to compensate Zoran for a significant portion of its damages, and includes payments of cash from not just Zoran's insurer, but from the two Individual Defendants who personally profited from the receipt of allegedly backdated options that were remeasured by the Special Committee, Gerzberg ($296,250) and Schneider ($98,750).  Gerzberg has also agreed to cancel $482,310 worth of stock options (using the Black-Scholes method of valuation).  This cash and option-based consideration from Gerzberg and Schneider will reimburse Zoran for the profits they received from difference in value between the original exercise price and the adjusted exercise price for those stock options that were remeasured by the Company and have already been exercised.  In addition, all three of the Individual Defendants who received allegedly backdated stock options that were remeasured by the Special Committee – Defendants Gerzberg, Schneider and Stabenow – will reprice all such options from the remeasured grant dates that they have not already exercised or voluntarily repriced.

Further, Lead Plaintiff's damages expert's maximum estimate of harm from the backdating was $13,054,684 (or $15,956,883 with prejudgment interest).  The cash recovery of $3,395,000 represents a recovery of more than twenty percent of Plaintiff's maximum damages amount, even when prejudgment interest is taken into account.  A number of courts, including

those within this Circuit, have approved settlements in which the defendants paid a much smaller percentage of the maximum potential recovery than is being conveyed to Zoran in this case. *See, e.g.*, *In re Applied Micro Circuits Corp.*, Slip Opinion, No. 06-04269 (N.D. Cal. May 8, 2008) (case involving $73.4 million restatement settled in exchange for corporate governance reforms), Farris Dec., Ex. C; *Hill v. Berdon* ("*Barnes & Noble*"), Slip Opinion, No. 602389/2006 (N.Y. Sup. Ct. May 5, 2008) (case involving $45.5 million charge settled in exchange for corporate governance and internal control reforms and $2.75 million in attorneys fees and expenses), Farris Dec., Ex. E; *In re The Cheesecake Factory Inc. Deriv. Litig.*, Slip Opinion, No. 06-06234 (C.D. Cal. April 14, 2008) (case involving $5.5 million restatement, settled for $516,000 in cash, $424,000 in cash or cancelled options, and corporate governance reforms), Farris Dec., Ex. F; *In re Jabil Circuit, Inc.*, Slip Opinion, No. 06-2917 (Fla. Pinellas County Ct. Apr. 7, 2008) (case involving $41.1 million in stock-based compensation charges settled in exchange for corporate governance reforms and $800,000 in attorneys' fees), Farris Dec., Ex. G; *In re Sepracor, Inc. Deriv. Litig.*, Slip Op., No. 06-11759 (D. Mass. Jan. 25, 2008) (case involving $43.3 million restatement settled in exchange for re-pricing and cancellation of stock options and corporate governance reforms), Farris Dec., Ex. H.

Gerzberg, Schneider, and Stabenow's agreement to provide the Company with cash, repriced options, and cancelled options (in addition to the previously repriced options), will have the effect of disgorging all of the profits any of the Individual Defendants made, or could have made, from the remeasured grants. That recovery, in addition to the $3,000,000 in cash (less attorneys' fees and costs) that Zoran will receive from the applicable insurance carriers, constitutes a significant percentage of the potential recovery. Plaintiff believes that the Settlement is fair, and is in the best interests of the Company and its shareholders.

Additionally, the law is clear that meaningful corporate reforms, such as the type contained in the Settlement, confer benefit on a company and support a settlement. *Bell Atl.*, 2 F.3d at 1311-12, citing *Granada Invs.*, 962 F.2d at 1207 (settlement in which corporation received release from potential liability and that called for changes in corporate governance aimed at limiting corporation's disbursements to settling defendant director and controlling shareholder approved); *Zimmerman,* 800 F.2d at 391 (approving settlement that invoked guidelines for "future management responses to tender offers and takeover bids"); *Maher*, 714 F.2d at 466-67 (non-monetary relief constituted adequate settlement relief).  The implementation of the proposed corporate reforms, which include enhanced procedures for the approval and administration of the Company's stock option practices, as well as improved general corporate governance policies and procedures  – which by agreement will remain in place for at least three years – particularly when combined with the other cash and option-based consideration, will provide additional benefit to Zoran.

Moreover, resolution of the litigation through settlement serves to reduce the total amount of fees and costs incurred by the parties.  Were Lead Plaintiff to continue with the litigation and to prevail on some or all of his claims, Lead Plaintiff's Counsel would be entitled to seek reimbursement from the Company for reasonable fees and costs, which will inevitably be much higher than they are currently.  Similarly, Defendants and third parties have incurred and will continue to incur significant legal costs and litigation expenses, much of which will be borne by the Company and may not be entirely compensable through insurance.  Should the litigation proceed, Plaintiff expects to incur costs relating to several additional experts, multiple summary judgment motions and significant additional depositions and other discovery.  All of these costs offset the value of any potential recovery.

Finally, the Settlement will benefit Zoran and its shareholders by sparing the Company and its management from the distraction of ongoing discovery and depositions, as well as the scheduled trial, which will be costly to the Company regardless of the outcome. *Zimmerman*, 800 F.2d at 392. For all of these reasons, the Settlement confers substantial benefit on Zoran.

### 3. The Extent and result of Lead Plaintiff's investigation and discovery support settlement approval.

The significant amount of discovery completed by the parties weighs in favor of final Settlement approval. *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *WPPSS*, 720 F. Supp. at 1392 (after discovery, parties have a more comprehensive picture through which to "evaluate the strengths and weaknesses of the litigation in connection with their contemplation and consummation of these settlements"); *In re Omnivision Tech.*, Inc., ___F. Supp. 2d., __, 2008 WL 123936, at*8 (N.D. Cal. Jan. 9, 2008).

Lead Plaintiff's Counsel has reviewed several hundred thousand documents, consisting of more than one and a half million pages. Farris Dec., ¶ 28. In addition, Lead Plaintiff has taken the depositions of seven party and non-party witnesses, as identified above, and had noticed the depositions of several others. *Id.*, ¶ 29. All of this discovery has placed Lead Plaintiff, together with his counsel, in a position to objectively evaluate the merits of this case and forms the basis of his opinion that the Settlement is in the Company's best interests.

### 4. The Settlement was reached through arm's length negotiation by experienced and informed counsel.

Lead Plaintiff and Defendants were represented by skilled counsel, experienced in handling complex shareholder litigation. Lead Plaintiff's choice of Keller Rohrback L.L.P. as counsel was carefully vetted and approved by this Court. Defendants Aharon, Burgess, Galil, Goldberg, Meindl, Owens, Shenberg, Sinar, and Stabenow are represented by Fenwick & West

LLP, Defendant Gerzberg is represented by Cooley Godward Kronish LLP, Defendant Schneider is represented by Morgan, Lewis & Bockius LLP, Defendant Martino is represented by Heller Ehrman LLP, and Nominal Defendant Zoran is represented by Akin Gump Strauss Hauer & Feld LLP.  Each of these law firms has extensive experience in litigating and resolving shareholder actions, and options backdating cases in particular.

Lead Plaintiff's Counsel has vigorously and effectively pursued the interests of Zoran and its shareholders in this litigation, both during the formal litigation process and in the parties' settlement negotiations.  The negotiations, which spanned several months, were conducted at arm's-length and with the clear purpose of obtaining a favorable settlement for Zoran and its shareholders.  Farris  Dec., ¶ 30-34.

In addition, the fact that counsel have carefully weighed the terms of the Settlement and considered its adequacy and fairness in light of the relevant litigation risks, and have determined that the Settlement is in the best interests of their respective clients, the Company and its shareholders, strongly in favor of final approval of the proposed settlement.  *Pac. Enter.*, 47 F.3d at 378 ("[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation"); *Rodriguez v. West Publ'g. Corp.*, No. 05-3222, 2007 WL 2827379, *9 (C.D. Cal. Sept. 10, 2007) ("[i]n assessing the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties"); *Nat'l Rural Telecomms. Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'[g]reat weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (citation omitted); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)

("[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness").

**D.**     <u>**The Notice to Zoran's Shareholders is Adequate.**</u>

The notice provided to shareholders of this proposed Settlement was adequate. "Nonparty shareholders must be given notice of a proposed settlement of a derivative action." *Bell Atl.,* 2 F.3d at 1317, *citing Maher,* 714 F.2d at 450. Fed. R. Civ. P. 23.1 provides that the district court shall direct the manner of notice to be given and affords the court broad discretion in making that determination. *Id.*; *Valerio v. Boise Cascade Corp.,* 80 F.R.D. 626, 636-638 (N.D. Cal. 1987), *aff'd* 645 F.2d 699 (9th Cir. 1981), *cert. denied,* 454 U.S. 1126 (1981).

The Notice directed by this Court satisfies the requirements of Rule 23.1 and due process, which require simply that the notice "must be sufficiently informative and give sufficient opportunity for response." *Bell Atl.*, 2 F.3d at 1317, *citing Kyriazi v. W. Elec. Co.,* 647 F.2d 388, 395 (3d Cir. 1981). Here, a seven-page detailed written notice, approved by the Court, was mailed directly to all shareholders of record, with instructions that said notices should be forwarded to all beneficial holders of Zoran stock. To further ensure the Zoran's shareholders would be well informed of what the settlement provides, the Notice, Stipulation and Settlement papers, Preliminary Approval Order, Complaint, and other relevant papers were posted online, at http://www.kellersettlements.com/zoran.html. Farris Dec., ¶ 56. Lead Plaintiffs' Counsel will also post this motion on the website after it is filed.

The Notice advises shareholders of the pending litigation, the nature of the claims asserted, the terms of the proposed settlement, the existence of related litigation, the scope of the release and potential effect on such litigation, as well as the time and place of the Settlement Hearing, the method for obtaining additional information or access to relevant documents and the

manner in which to seek information, object to the Settlement or participate in the hearing.  The Notice provides precisely the same information, if not more, than that which has been deemed adequate in similar cases.  *See, e.g., Maher*, 714 F.2d at 450-451 (court-approved notice held sufficient where it described nature of the action, claims asserted, general terms of proposed settlement, and informed shareholders of how to obtain additional information, time and location of hearing, and right to participate); *Bell Atl.*, 2 F.3d at 1317-18 (notice containing similar information approved).  In short, the notice satisfies its essential purpose under Rule 23.1 and due process, which is "to fairly apprise the [shareholders] of the terms of the proposed settlement and of the options that are open to them."  *Maher*, 714 F.2d at 451 (citations omitted).

## VI.    LEAD PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Plaintiffs' Counsel seek an award of attorneys' fees in the amount of $1,000,000, to be distributed to Lead Plaintiff's Counsel.  This Court should award Lead Counsel fees in this amount given the results achieved in this case, the substantial risks associated with the litigation, the amount of discovery adduced to date, counsel's skill and experience in cases of this type, and fee awards in comparable litigation.  Moreover the fees, represent only 53-56% of the total lodestar expended to date, after expenses are deducted, essentially at no cost to the Company.  Farris Dec., ¶ 50.

### A.    The Legal Standard Governing the Award of Attorneys' Fees in Derivative Cases.

Courts in this jurisdiction have held that derivative litigation counsel who successfully prosecute such a case confer a substantial benefit on the corporation, are thus entitled to an award of fees and that under such circumstances the fee award should be granted so long as the agreed upon fee falls within the range of reasonableness.  *In re M.D.C. Holdings Sec. Litig.*, No. 89-90, 1990 WL 454747, at*4 (S.D. Cal. Aug. 30, 1990) (applying federal and California law

and approving $3 million in fees as part of a negotiated settlement); *In re Oracle Sec. Litig.,* 852 F. Supp. 1437, 1445 (N.D. Cal. 1994) (citing *Chrysler Corp. v. Dann,* 43 Del.Ch. 252, 223 A.2d 384, 386-87 (1966) and *Lewis v. Anderson,* 692 F.2d 1267, 1270 (9th Cir. 1982) ("Derivative counsel are entitled to compensation so long as two requirements are satisfied: (1) the derivative suit creates a substantial benefit to the corporation; and (2) the derivative complaint was 'meritorious.'")[7]

## B.   The Settlement Confers Substantial Benefit on Zoran.

The proposed Settlement confers both monetary and non-monetary benefit.  As discussed above, the settlement confers $3.4 million in cash and more than $739,000 in repriced and cancelled options, using their intrinsic value.   Applying a Black-Scholes valuation, the total value to the Company of these components of the settlement, according to Plaintiffs' expert is between $3.9 and $5.2 million. Johnson Aff. at 15.[8]  Moreover, the proposed fee award will be paid by the insurance carrier, at no direct cost to the Company.[9]  As such, the compensation for fees and expenses that might otherwise be charged to the Company is an additional benefit of the Settlement itself. [10] When compared to the total maximum potential damages of $13,054,684, or $15,956,883 including prejudgment interest, *see,* Bohn Report (Dkt. No. 148) at 20, the

---

[7] That the complaint was meritorious is demonstrated by this Court's ruling on the Defendants' motion to dismiss, *Zoran*, 511 F. Supp. 2d 986.

[8] This valuation was calculated at the time of the preliminary approval hearing.  The precise value at the time of transfer will vary depending upon the value of Zoran's stock after final approval of the Settlement, on the date the transfer is made.

[9] To be clear, while the parties agreed that any attorneys' fees and costs should be paid from the insurance proceeds made available as part of the Settlement, the specific amount to be awarded, if any, was left to the discretion of this Court.

[10] The benefit conferred by the proposed Settlement also includes the value of the corporate therapeutics made part of the settlement.  That value, though relevant, is difficult to quantify and is not included here.

LEAD PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF PROP SETTLEMENT AND AWARD ATTY FEES
(Case No. 06-05503-WHA) - Page 19

settlement value of $3,395,000 cash and between $3.9 and $5.2 in cash and options represents a meaningful percentage of the potential recovery of at least 21% and as much as 35% of the total recovery.   The corporate governance relief also confers a real benefit and will help to prevent future errors in the Company's stock option practices alleged in Complaint or which the Company acknowledged in its public filings.  Farris Dec., Ex. A, at Attachment A.

**C.**     **The Amount Requested for Attorneys' Fees is Reasonable.**

      **1.**     **The Fee request represents an appropriate percentage of the total recovery.**

Derivative lawsuits, including this one, typically confer a common benefit that exceeds the pecuniary relief achieved, which alone can justify an award of attorneys fees.  *See e.g. Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1194-95 (6th Cir. 1974); *Cohn v. Nelson,* 375 F. Supp. 2d 844, 861 (E.D. Mo. 2005).

Nevertheless, particularly where the litigation creates a monetary benefit, analysis of the fee request as a percentage of the settlement value, consistent with the common fund analysis, may be helpful in determining whether the fee is reasonable. *In re Oracle,* 852 F. Supp. 1437 (1994*)*.  In this instance, the fee request of $1 million represents 29 percent of the total cash award, 24 percent of the intrinsic value of the cash, repriced and cancelled options, and between 19 and 25% of the total value of the Settlement to the Company using the Black-Scholes valuation conducted by Lead Plaintiff's expert.  See Johnson Affidavit p.15.  This compares favorably with the 25 percent benchmark favored in this Circuit, and is certainly appropriate when compared to the many cases in which an upward adjustment from the benchmark is deemed appropriate.  *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) (finding that "in most recent cases the benchmark is closer to 30%"); *Omnivision*, 2008 WL 123936, at *10 (recognizing similar trend).  Moreover, fee awards granted in other backdating

cases in which no monetary benefit was conveyed to the corporation demonstrates that the fee award sought by Lead Plaintiff's Counsel is reasonable.  *See, e.g.*, *In re Applied Micro Circuits Corp.*, Slip Opinion, No. CV 06-04269-JW (N.D. Cal. May 8, 2008)  ($905,000 in fees and expenses awarded for corporate governance reforms), Farris Dec., Ex. C; *In re Family Dollar, Inc. Shareholder Deriv. Litig.*, Slip Opinion, No. 3:06-CV-00-510(W) (W.D.N.C. Aug. 13, 2007) ($3.5 million in fees and expenses awarded for 210,000 relinquished stock options and corporate governance reforms), Farris Dec., Ex. D.

## 2.   The request is appropriate when compared to lodestar.

As an additional check on the reasonableness of Plaintiff's Counsel's requested fee, some courts elect to compare the fee counsel seeks with what their hourly rate would justify using the lodestar analysis.  *See e.g. In re Oracle Sec. Litig.*, 852 F. Supp at 1449.

Here, Lead Plaintiff's Counsel expended more than 5,000 hours on this case (not including the amount of time counsel spent preparing for and attending the final approval hearing and responding to shareholder objections), for a total lodestar amount of $1.9 million at present-day rates, or $1.8 million at the 2007 rates as agreed upon by Lead Plaintiff and Counsel.  Farris Dec., ¶ 47.  By limiting their fee request to $1 million, Lead Plaintiff's counsel requests only 53-56% of their total lodestar in the litigation, after deduction of expenses. Farris Dec., ¶ 50. Moreover, the parties to the litigation negotiated to ensure that the compensation itself does not come directly from the Company, but is paid by the Company's insurance carriers.  This feature also ensures that the amount requested for compensation of fees and expenses is consistent with the precepts of Rule 23.1.  *See, e.g. Cohn*, 375 F. Supp. 2d at 865*, citing Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 310 (1985) (internal citations omitted) ("it is imperative that the filing of contingent class action and derivative lawsuits not be chilled by the failure to

award attorneys' fees or by the imposition of fee awards that fail to adequately compensate counsel for the risks of pursuing such litigation, and the benefits that would not otherwise be achieved.").

### 3.      The fee request is consistent with prior agreements of the parties.

In determining a reasonable fee amount, courts also give careful consideration to what the parties have negotiated. *In re Cont'l Ill. Sec. Litig.,* 962 F.2d 566, 568-70 (7th Cir. 1992) (appropriate to determine award based on what the lawyer would negotiate in the open market) In this instance, the Court required that Lead Plaintiff, as a condition of his appointment, institute a competitive bid process for selecting counsel and determining fees.  Order Granting Gerald Del Rosario's Motion for Appointment as Lead Plaintiff (Dkt. No. 37) (January 18, 2007).  A copy of the proposal from Keller Rohrback, L.L.P., was previously submitted to this Court under seal. [insert cite] While mindful of this Court's role, consistent with Fed. R. Civ. P. 23.1, in the final determination of any fee or expense award, the parties negotiated an agreement that both Lead Plaintiff and Counsel believed to be beneficial to the company and its shareholders whom Lead Plaintiff represents and was competitive when compared other bids received. *Id.,* Farris Dec., ¶¶ 47-53.  The fee request and expenses submitted for reimbursement are consistent with that agreement and represent a significant savings to the Company and its shareholders.  *Id.*

### 4.      The fee request is justified by common fund considerations.

Where a derivative settlement confers a monetary benefit or settlement fund, courts may also look at other common fund considerations to determine whether the requested fee is reasonable, including:  "(1) the benefits achieved in the action; (2) the efforts of counsel and the time spent in connection with the case; (3) the contingent nature of the fee; (4) the difficulty of the litigation; and (5) the standing and ability of counsel involved."  *Cohn,* 375 F. Supp. 2d at

864; *see also Oracle,* 852 F. Supp. at 1445 (recognizing that there are "no substantial differences between Delaware and federal law" regarding derivative counsel fees, and that "in both the common fund and common benefit cases, the [Supreme] Court has refused to place form over substance, focusing instead on the actual effect of a plaintiff's suit") (internal citations omitted). As discussed above, Plaintiffs' Counsel expended considerable effort investigating and litigating their claims and negotiating a settlement that is in the best interest of the Company and its shareholders.   Lead Plaintiff's Counsel has substantial experience in securities and other complex litigation.   Farris Dec., at ¶ 20.   As with most cases of this type, the litigation was brought on a contingent fee basis and the risk of recovery was borne by counsel.   *Id.*, ¶¶ 17-18. Moreover, the litigation itself was challenging, given that the practice of stock option backdating, though widespread, had not been discovered until months before the case was filed and the case law regarding these practices had not been developed at the time the lawsuit was filed.   Farris Dec., ¶ 10.

**D.     The Amount Requested for Reimbursement of Costs is Reasonable.**

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."   *Omnivision*, 2008 WL 123936, at *11; *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).   This includes expenses relating to "photocopying, printing, postage and messenger services, court costs, legal research on Lexis and Westlaw, experts and consultants, and the costs of travel for various attorneys and their staff throughout the case."   *Omnivision*, 2008 WL 123936, at *11; *see also Harris*, 24 F.3d at 19.

Lead Plaintiff's Counsel requests $363,243.92 in reimbursement of costs incurred in this litigation.   All of these expenses were necessary and incurred in reaching the successful resolution of this matter.   Moreover, the reimbursement request represents a significant savings

for the shareholders as the amount is significantly below the actual costs relating to the prosecution of this matter that would typically be charged to, and paid by a client in other litigation.  The request reflects the prior agreement of counsel and Lead Plaintiff to limit or reduce the total costs and expenses, through careful negotiation with vendors and limitations on charges for certain types of costs.  Farris Dec., ¶ 54.  Lead Plaintiff's Counsel is entitled to recoup all of these expenses.

## VII.   <u>CONCLUSION</u>

After hard-fought litigation and extensive arm's length negotiations in a difficult and complex case, a settlement has been achieved that is fair, reasonable, and adequate, and will provide substantial and meaningful relief to Zoran and its shareholders.  The award sought by Lead Plaintiffs' Counsel's request for fees and expenses is also reasonable.  The award appropriately recognizes the efforts of Counsel to pursue the legal rights of Zoran and its shareholders, as well as the risks undertaken, and the successful results achieved.  Plaintiffs respectfully request, therefore, that the Court grant Lead Plaintiff's Motion for Final Approval of Settlement, including the requested award of fees and costs.

DATED this 18th day of July, 2008.

/s/ Juli E. Farris

Lynn Lincoln Sarko
lsarko@kellerrohrback.com
Juli E. Farris, CA Bar No. 141716
jfarris@kellerrohrback.com
Elizabeth A. Leland
bleland@kellerrohrback.com
Shane P. Cramer
scramer@kellerrohrback.com
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
(206) 623-1900 (phone)
(206) 623-3384 (fax)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gary A. Gotto
Keller Rohrback P.L.C.
National Bank Plaza
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
(602) 248-0088 (phone)
(602) 248-2822 (fax)

***Attorneys for Lead Plaintiff***
***Gerald del Rosario***

CERTIFICATE OF SERVICE

I, Diana Au, hereby certify that a true and correct copy of the foregoing LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, INCLUDING AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES is being served this date upon all parties on the ECF notification list, by electronic notification and via e-mail in accordance with Local Rule 6-3(b).

Dated:  July 18, 2008

/s/ Diana Au
Diana Au